ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| CARLOS J. SILVA GALINDO<br><br>Parte Recurrente<br><br>V.<br><br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Parte Recurrida | TA2026RA00251 | *Revisión Judicial* procedente del Departamento de Corrección y Rehabilitación, División de Remedios Administrativos<br><br>Caso Núm.: 148073<br>Confinado Núm.: 4-20727<br>Respuesta de Reconsideración: CBD-85-26<br><br>Sobre:<br>Ley 85-2024 |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Salgado Schwarz, Carlos G., juez ponente

## SENTENCIA

En San Juan, Puerto Rico a 30 de junio de 2026.

Comparece antes nos Carlos J. Silva Galindo (en adelante "Silva Galindo" o "recurrente"), *in forma pauperis*, y nos solicita que revoquemos la *Resolución* emitida el 14 de abril de 2026, por la División de Remedios Administrativos (en adelante "DRA") del Departamento de Corrección y Rehabilitación de Puerto Rico (en adelante "DCR"). Mediante el referido dictamen, la DRA confirmó la *Respuesta del Área Concernida / Superintendente* emitida por el Supervisor del Récord Criminal. En su consecuencia, se confirmó que los delitos por los cuales Silva Galindo fue convicto lo excluyen para la Junta de Libertad Bajo palabra (en adelante "JLBP").

Por los fundamentos que exponemos a continuación, confirmamos la *Resolución* recurrida. Veamos.

**-I-**

El 6 de febrero de 2026, Silva Galindo presentó una *Solicitud de Remedio Administrativo* ante la DRA del DCR.[1] Alegó que el DCR interpretó erróneamente la Ley Núm. 85 del 28 de mayo de 2024[2], ya que, según este, dicha Ley excluye de la jurisdicción de la JLBP a los casos de secuestros con delitos sexuales. Adujo que los delitos por los que fue convicto fueron asesinato, ley de armas y secuestro, y que la mencionada exclusión no le aplica.

El 18 de febrero de 2026, Ricardo L. Díaz Rivera (en adelante "Díaz Rivera"), supervisor de récord criminal, envió a la evaluadora de la DRA una *Respuesta del Área Concernida / Superintendente*.[3] En dicha respuesta expresó que "[l]a ley 85 est[á] aplicada correctamente en su caso, los delitos excluyentes para al JLBP[,] a pesar de no estar liquidados por ser concurrentes con los dem[á]s

---

[1] Página 4 del Anejo I en la Entrada Núm. 4 en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA).
[2] Ley Para enmendar el Artículo 308 de la Ley 146-2012, según enmendada y enmendar el Artículo 3 de la Ley Núm. 118 de 22 de julio de 1974, según enmendada, a los fines de reafirmar que las personas convictas por los delitos de agresión sexual en todas sus modalidades, agresión sexual conyugal, actos lascivos, violación, sodomía, incesto, secuestro, secuestro agravado y pornografía infantil, incluyendo sus tentativas, no podrán beneficiarse del privilegio de libertad bajo palabra, indistintamente de la fecha de la comisión del acto delictivo ni el código penal o la ley especial utilizada para dictar sentencia; aclarar que la Ley 85-2022 no aplicará retroactivamente a las personas convictas por estas actuaciones delictivas; disponer que el referido estatuto no surtirá efecto en el cálculo de su sentencia; y para otros fines relacionados.
[3] Página 7 del Anejo I en la Entrada Núm. 4 en el SUMAC TA.

delitos, siguen estando dentro de lo expuesto en la ley en cuanto a las exclusiones."[4]

En desacuerdo, el 11 de marzo de 2026, Silva Galindo presentó una *Solicitud de Reconsideración* ante la DRA.[5] Alegó que la *Respuesta* del supervisor de récord criminal estaba errónea. Adujo que no tenía casos por delitos sexuales y reiteró que los casos excluyentes por la JLBP son secuestro con cualquier delito de índole sexual.[6]

El 14 de abril de 2026, la DRA emitió la *Resolución* que hoy nos ocupa.[7] Mediante el referido dictamen, la DRA confirmó la *Respuesta* emitida por el supervisor de récord criminal. En su consecuencia, se confirmó que los delitos por los cuales Silva Galindo fue convicto lo excluyen para la JLBP.

Inconforme, el 14 de mayo de 2026, la parte recurrente presentó el recurso de epígrafe y señaló los siguientes errores:

> **PRIMERO:** Erró la División de Remedios Administrativos en el caso CDB-85-26 al emitir una Respuesta, sin tener todos los elementos del caso administrativo bajo el debido proceso de ley.
>
> **SEGUNDO:** Erró el Departamento de Corrección y Rehabilitación en privarme del derecho a que la Junta de Libertad Bajo Palabra evaluara el caso de este recurrente al esperar 7 años para atender una orden de vista de la Junta de Libertad Bajo Palabra el cual privó de la oportunidad de quedar en libertad supervisada violando mi derecho constitucional a la rehabilitación.
>
> **TERCERO:** Erró el (DCR) al utilizar en la Resolución de la División de Remedios Administrativos de 14 de abril de 2026 al

---

[4] El 25 de febrero de 2026, se le entregó a Silva Galindo el *Recibo* de la mencionada *Respuesta* (Página 8 del Anejo I en la Entrada Núm. 4 en el SUMAC TA).

[5] Página 9 del Anejo I en la Entrada Núm. 4 en el SUMAC TA.

[6] El 25 de marzo de 2026, el DRA acogió la *Solicitud de Reconsideración* (Página 9 del Anejo I en la Entrada Núm. 4 en el SUMAC TA).

[7] Página 13 del Anejo I en la Entrada Núm. 4 en el SUMAC TA. Silva Galindo recibió copia de dicha *Resolución* el 17 de abril de 2026 (Página 15 del Anejo I en la Entrada Núm. 4 en el SUMAC TA).

utilizar la Ley 85-2024 para adjudicar asuntos que competen a la Junta de Libertad Bajo Palabra el (DCR) no tiene facultad en ley para determinar la jurisdicción de la (JLBP) ni para aplicar retroactivamente una norma que afecte el término de reclusión del peticionario. Al hacerlo, el (DCR) actuó ultra vires (fuera de su poder legal) usurpando funciones de la (JLBP) y violando el debido proceso de ley.

**CUARTO**: Que el (DCR) [erró] al no aplicar el Derecho a la Revisión del caso de epígrafe como dispone la ley vigente; Ley Número 50 de 31 de marzo de 2026[,] fecha vigente al emitir la Resolución; al amparo del Artículo 4; CP Principio de Favorabilidad la ley más benigna.

Examinado lo anterior, el 15 de mayo de 2026, emitimos y notificamos una *Resolución*, en la que dispusimos que la parte recurrida debería someter su Alegato en Oposición en o antes del 15 de junio de 2026.

En cumplimiento con nuestra orden, el 15 de junio de 2026, la parte recurrida presentó un *Escrito en Cumplimiento de Resolución*.[8] En síntesis, alegó que el DCR refirió el caso del recurrente a la JLBP y fue esta quien concluyó que no ostentaba jurisdicción para atender su caso, puesto que el delito de secuestro lo excluía por la Ley Núm. 85-2024, *supra*. Además, adujo que la DRA no tiene jurisdicción para revisar ninguna decisión emitida por la JLBP.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

### -II-

#### A. Revisión Judicial de Decisiones Administrativas

En nuestro ordenamiento, la revisión judicial de decisiones administrativas tiene como fin primordial limitar la discreción de las agencias y asegurar que estas desempeñen sus funciones conforme a la ley.[9] Esta

---

[8] Entrada Núm. 4 en el SUMAC TA.
[9] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891-892 (2008).

doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados y si son compatibles con la política pública que las origina.[10] Por lo general, el ejercicio de revisión judicial de una decisión administrativa suele ceñirse a tres áreas: (1) la concesión del remedio apropiado; (2) la revisión de las determinaciones de hechos conforme al criterio de evidencia sustancial; y (3) la revisión completa y absoluta de las conclusiones de derecho.[11]

Ahora bien, dentro de este marco, los tribunales apelativos deben concederle gran deferencia a las decisiones emitidas por las agencias, debido a la vasta experiencia y conocimiento especializado que estas tienen en los asuntos que se les han sido encomendados.[12] De esta manera, estas determinaciones son amparadas por una presunción de legalidad y corrección, la cual los tribunales deben respetar mientras la parte que las impugna no presente evidencia suficiente para derrotarlas.[13] A la luz de lo anterior, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[14]

Ahora bien, la deferencia reconocida a las decisiones de las agencias administrativas cede en algunas situaciones, tales como: (1) cuando la

---

[10] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).
[11] *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010).
[12] *Rolón Martínez v. Supte. Policía*, *supra*, pág. 35; *Asoc. Fcias. v. Caribe Specialty et al. II.*, *supra*, pág. 940.
[13] *Rolón Martínez v. Supte. Policía*, *supra*, pág. 35, citando a *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016).
[14] *García Reyes v. Cruz Auto Corp.*, *supra*, pág. 892.

decisión no esté basada en evidencia sustancial; (2) cuando la agencia haya errado en la aplicación de la ley; (3) cuando su actuación resulte ser arbitraria, irrazonable o ilegal; y (4) cuando la actuación administrativa lesiona derechos constitucionales fundamentales.[15]

Entretanto, la Ley Núm. 38 de 30 de junio de 2017, conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (Ley Núm. 38-2017)[16] recoge el alcance de la revisión judicial en su Sección 4.5, al establecer que:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
>
> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
>
> Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.[17]

Conforme lo dispone la precitada Ley Núm. 38-2017, las conclusiones de derecho son revisables en todos sus aspectos.[18] Empero, ello no significa que se podrá descartar libremente las conclusiones e interpretaciones de la agencia para sustituirla por el criterio del tribunal.[19] En ese entonces, el tribunal está llamado a aplicar los criterios anteriores de intervención, especialmente en aquellas situaciones en que no encuentre una base racional que fundamente la actuación administrativa.[20] En virtud de este análisis, cabe recordar que los tribunales solo deben intervenir

---

[15] *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012), citando a *Empresas Ferrer v. ARPE*, 172 DPR 254, 264 (2007).
[16] 3 LPRA secs. 9603-9713.
[17] 3 LPRA sec. 9675.
[18] *Torres Rivera v. Policía de PR*, *supra*, pág. 627.
[19] *García Reyes v. Cruz Auto Corp.*, *supra*, pág. 894.
[20] *Íd.*, pág. 896.

en las decisiones administrativas cuando concluyan que se ha actuado arbitraria, ilegal o irrazonablemente.[21]

### B. Junta de Libertad Bajo Palabra

La Constitución de Puerto Rico instaura como política pública del Estado reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva, y así propender al tratamiento adecuado de la población correccional a los fines de posibilitar su rehabilitación moral y social.[22] En armonía de este mandato constitucional, la *Ley de la Junta de Libertad Bajo Palabra*,[23] instituye este organismo administrativo como una entidad adscrita al Departamento de Corrección y Rehabilitación de Puerto Rico. El Artículo 3-D de la precitada legislación establece que dicha agencia goza de la facultad para conceder el privilegio de libertad bajo palabra de una persona recluida en una institución penal en Puerto Rico.[24] Este beneficio no es un derecho reclamable, sino un privilegio cuya concesión y administración recae en el tribunal o en la Junta.[25]

A esos fines, el Artículo 4 de la Ley Núm. 118-1974, *supra*, regula la jurisdicción de la Junta de Libertad Bajo Palabra de la siguiente manera:

> En los casos de las personas convictas conforme al vigente Código Penal del Estado Libre Asociado, la elegibilidad de los casos para consideración por la Junta se determinará conforme a la clasificación de gravedad de delito y a las condiciones para su concesión que establece el mencionado cuerpo legal.[26]

---

[21] *Rolón Martínez v. Supte. Policía*, supra, pág. 36.
[22] Const. PR, Art. VI, Sección 19, LPRA Tomo I.
[23] *Ley de la Junta de Libertad Bajo Palabra*, Ley Núm. 118 de 22 de junio de 1974, 4 LPRA sec. 1501, según enmendada (Ley Núm. 118-1974).
[24] 4 LPRA 1503(d).
[25] *Quiles v. Del Valle,* 167 DPR 458, 475 (2006).
[26] 4 LPRA sec. 1504.

Considerado este requisito jurisdiccional, la Junta tendrá facultad para evaluar si procede conceder el privilegio de libertad bajo palabra, a la luz de una serie de requisitos establecidos en el Artículo 3-D de la Ley Núm. 118-1974, *supra*.[27] De cumplir con tales criterios, el solicitante del privilegio tendrá la oportunidad de extinguir la última parte de su sentencia fuera de la institución penal, sujeto a la observancia de las condiciones que se impongan para conceder la libertad.[28] No obstante, la libertad bajo palabra solo será decretada en consideración del mejor interés de la sociedad y cuando las circunstancias permitan creer con razonable certeza que tal medida habrá de lograr la rehabilitación moral y económica del confinado.[29]

### C. Ley Núm. 85-2024

La Asamblea Legislativa de Puerto Rico adoptó la Ley Núm. 85 del 28 de mayo de 2024 (Ley Núm. 85-2024)[30], con el propósito de salvaguardar el derecho de las víctimas de delitos de agresión sexual en todas sus modalidades, agresión sexual conyugal, violación, actos lascivos, sodomía, incesto, secuestro, secuestro agravado y pornografía infantil, incluyendo sus tentativas.

De acuerdo con la legislatura, es imperativo "atemperar esta Ley a los tiempos que vivimos, donde los casos de esta índole cada día son más notorios y a

---

[27] 4 LPRA sec. 1503d.
[28] *Quiles v. Del Valle, supra*, pág. 475.
[29] Artículo 3 de la Ley Núm. 118-1974 *supra,* 4 LPRA sec. 1503. Véase, también, *Lebrón Pérez v. Alcaide, Cárcel de Distrito,* 91 DPR 567, 570 (1964).
[30] La versión de Leyes de Puerto Rico Anotadas de esta pieza legislativa corresponde a las codificaciones de la serie de leyes matrices enmendadas por la ley en cuestión.

su vez, atroces".[31]   A los fines de alcanzar este propósito, la precitada ley enmendó el Artículo 3 de la Ley Núm. 118-1974, *supra*, y de manera expresa decretó que:

> **[L]as personas convictas por los delitos de** agresión sexual en todas sus modalidades, incluyendo la tentativa, violación, actos lascivos, sodomía, incesto, **secuestro**, secuestro agravado y pornografía infantil **no podrán beneficiarse del privilegio de libertad bajo palabra**, indistintamente de la fecha de la comisión del acto delictivo ni el código penal o la ley especial utilizada para dictar sentencia, incluyendo los Códigos Penales de 1974, 2004 y 2012.[32]

Asimismo, la aprobada ley instaura una cláusula de exclusión de la jurisdicción de la Junta de Libertad Bajo Palabra, al disponer que:

> **La Junta no tendrá jurisdicción para atender los casos de las personas convictas por los delitos de** agresión sexual en todas sus modalidades, agresión sexual conyugal, violación, actos lascivos, sodomía, incesto, **secuestro**, secuestro agravado y pornografía infantil, incluyendo sus tentativas, no podrán beneficiarse del privilegio de libertad bajo palabra, indistintamente de la fecha de la comisión del acto delictivo ni el código penal o la ley especial utilizada para dictar sentencia, incluyendo los Códigos Penales de 1974, 2004 y 2012.[33]

### D. Leyes Ex Post Facto

La Constitución de Puerto Rico, al igual que la Constitución de Estados Unidos de América, prohíben aplicar leyes *ex post facto*.[34] Esta limitación constitucional busca prohibir la aplicación retroactiva de una ley que agrave para el acusado su relación con el delito, la oportunidad de defenderse y la forma de cumplir con una sentencia o su extensión.[35] En virtud de esta cláusula, "se intenta asegurar que

---

[31] Exposición de Motivo de la Ley Núm. 85-2024, *supra*.
[32] Sección 2 de la Ley Núm. 85-2024, *supra*. (Énfasis Nuestro).
[33] Sección 3 de la Ley Núm. 85-2024, *supra*. (Énfasis Nuestro).
[34] Art. II, Sec. 12, Const. PR, LPRA, Tomo 1; Art. I, Sec. 10, Cl. 1, Const. EE. UU, LPRA, Tomo 1.
[35] *Pueblo v. Ferrer Maldonado*, 201 DPR 974, 991 (2019).

el Estado no utilice el poder coercitivo de forma arbitraria o vengativa".[36]

A esos fines, nuestro estado de derecho reconoce como leyes *ex post facto* aquellas legislaciones que presenten algunos de estos escenarios: (1) leyes que criminalizan y castigan un acto que, al ser realizado, no era delito; (2) las que agravan un delito o lo hacen mayor de lo que era al momento de ser cometido; (3) las que alteran el castigo imponiendo una pena mayor que la fijada para el delito al momento de ser cometido, y (4) las que alteran las reglas de evidencia, exigiendo menos prueba que la requerida por la ley al momento de la comisión del delito para castigar al acusado o reducir el quantum de evidencia necesario para encontrarlo culpable.[37]

Conviene destacar que el Tribunal Supremo de Puerto Rico especifica que esta prohibición opera cuando una ley elimina retroactivamente bonificaciones por buen comportamiento que estaban vigentes cuando el acusado realizó la conducta delictiva.[38] De manera similar, a modo ilustrativo, el foro supremo emitió el siguiente pronunciamiento jurídico:

> Si aplicáramos la Ley de Menores de 1986 a los hechos ocurridos el 9 de febrero de 1986, ello equivaldría a la aplicación *ex post facto* de una ley en detrimento del menor, habida cuenta que se le estaría juzgando bajo términos y condiciones más onerosos que los impuestos por la ley vigente a la fecha en que alegadamente se perpetraron los hechos, lo cual es constitucionalmente impermisible.[39]

En esa dirección, al examinar si una ley penal resulta "más onerosa que la vigente al momento de la

---

[36] *González Fuentes v. E.L.A.*, 167 DPR 400, 408 (2006).
[37] *Pueblo v. Ferrer Maldonado*, *supra*, pág. 990; *Pueblo en interés menor F.R.F.*, 133 DPR 172, 180 esc. 14 (1993).
[38] *Pueblo en interés menor F.R.F.*, *supra, pág. 180.*
[39] *González v. ELA*, *supra*, pág. 409.

comisión de los hechos es necesario examinar si, en comparación con el viejo estatuto, la nueva ley tiene el efecto de alargar el término de reclusión que habría de ser cumplido por el sujeto".[40] Una vez se efectúa ese análisis, la protección constitucional solo se activa cuando el estatuto que pretende aplicar retroactivamente es más oneroso que el que estaba vigente a la fecha en que se cometió la ofensa.[41]

## -III-

Por estar relacionados entre sí, discutiremos los errores señalados en conjunto. El recurrente alega que se le violó el debido proceso de ley al aplicar una norma retroactivamente, que afecta su término de reclusión, y que el DCR usurpó poderes de la JLBP al adjudicar asuntos que no le competen. Sostiene que el DCR incidió al no aplicar el derecho de la revisión bajo el Artículo 4-A de la Ley Núm. 118-1974, *supra*. Aduce, además, que el DCR erró al emitir una respuesta, sin tener todos los elementos del caso administrativo.

Por su parte, la parte recurrida sostiene que la DRA atendió adecuadamente el recurso presentado, y que fue la JLBP quien evaluó el caso y se declaró sin jurisdicción para atenderlo.

En el dictamen recurrido, el DRA determinó confirmar la respuesta emitida por el supervisor de récord criminal, en cuanto a la exclusión de la JLBP por los delitos de los cuales el recurrente fue convicto. La JLBP concluyó que carece de jurisdicción para atender el caso, toda vez que el recurrente se

---

[40] *Íd.*
[41] *Corretger v. Adm. Corrección*, 172 DPR 320, 324 (2007).

encuentra cumpliendo la pena de dos convicciones de secuestro, y que dichos delitos lo excluyen para ser considerado para libertad bajo palabra en este momento.

Es conocido que cuando hay falta de jurisdicción, lo único que resta es así declararlo y desestimar la reclamación sin entrar en los méritos de la controversia.[42] Lo cierto es que, en este caso, el recurrente se encuentra cumpliendo unas penas por el delito de secuestro, y dicha pena lo excluye del privilegio de libertad bajo palabra, según dispone la Ley Núm. 85-2024, *supra*. Así correctamente lo reconoció la JLBP.

Por otro lado, el recurrente plantea que incidió el DCR al aplicar una ley de manera retroactiva que afecta su sentencia, y que esta no tiene facultad para determinar la jurisdicción de la JLBP. Sin embargo, es importante recordar que la libertad bajo palabra es un privilegio y no un derecho. La exclusión de dicho beneficio no implica la imposición de una pena más onerosa, no agravia el delito ni altera el castigo. Sino que, de no otorgarse dicho beneficio, su sentencia se estaría llevando a cabo de igual manera a como se le impuso.

En este caso, la aplicación de la Ley Núm. 85-2024, *supra*, de ninguna manera (1) criminaliza y castiga un acto que, al ser realizado, no era delito; (2) agrava un delito o lo hace mayor de lo que era al momento de ser cometido; (3) altera el castigo imponiendo una pena mayor que la fijada para el delito

---

[42] *R&B Power, Inc. v. Junta de Subastas ASG*, 213 DPR 685, 698 (2024).

al momento de ser cometido, ni (4) altera las reglas de evidencia, exigiendo menos prueba que la requerida por la ley al momento de la comisión del delito para castigar al acusado o reducir el quantum de evidencia necesario para encontrarlo culpable.[43] Sino que, por el contrario, el delito ya estaba tipificado por el Código Penal al momento de su comisión, con la gravedad y pena a imponerse, y establecido el quantum de prueba necesario. Estos elementos no fueron modificados por la precitada ley.

De igual manera, el DCR no adjudicó asuntos que no le competen. Por medio de su *Resolución*, confirmó la expresión hecha por el supervisor del récord criminal en cuanto a la exclusión de la JLBP, mientras el recurrente se encuentre cumpliendo la pena del delito de secuestro. De hecho, cabe señalar que el recurrente no está excluido del todo del beneficio, sino que una vez cumpla la pena impuesta por el delito de secuestro, entonces puede solicitar el privilegio de libertad bajo palabra. Es entonces que la JLBP ostenta jurisdicción y puede evaluar su solicitud.

En cuanto a la alegación de que no se aplicó el derecho de revisión según dispuesto en el Artículo 4-A de la Ley Núm. 118-1974, *supra*, dicha ley lo que establece es que, "[l]a reconsideración dispuesta en este Artículo se refiere a aquellos casos en que se ha **denegado** el privilegio de la libertad bajo palabra a un miembro de la población correccional."[44] En el presente caso, la JLBP no le denegó el privilegio al

---

[43] *Pueblo v. Ferrer Maldonado*, *supra*, pág. 990; *Pueblo en interés menor F.R.F.*, 133 DPR 172, 180 esc. 14 (1993).
[44] Artículo 4-A de la Ley Núm. 50-2026, *supra*, 4 LPRA sec. 1504a. (Énfasis Nuestro).

recurrente, sino que reconoció que no tiene jurisdicción en este momento. Expresó que, una vez el recurrente haya cumplido la totalidad de la sentencia por la convicción de secuestro, entonces el DCR debe referir el caso nuevamente a la JLBP. No es una denegatoria, sino poner la evaluación en suspenso hasta tanto el recurrente cumpla con la sentencia del delito que lo excluye de la jurisdicción de la JLBP y entonces esta podrá evaluar su caso para el privilegio de libertad bajo palabra.

Respecto al señalamiento de que el DCR emitió una respuesta sin tener todos los elementos del caso administrativo, del expediente surge el trámite procesal, desde el *Informe Breve Para Referir Casos de Sentencia Por Delito Grave y Menos Grave Ante la Junta de Libertad Bajo Palabra*, la *Solicitud de Remedios*, *Respuesta* del supervisor de récord criminal y *Solicitud de Reconsideración*, hasta la presentación del recurso ante nos. Ciertamente el DCR evaluó la totalidad del expediente y remitió la respuesta correspondiente al miembro de la población correccional. En este caso, sobre el reconocimiento de falta de jurisdicción por la JLBP para atender su caso en este momento, por estar excluido del beneficio por convicción del delito de secuestro.

En virtud de lo anterior, y por no haberse cometido los errores señalados, procede confirmar la *Resolución* recurrida.

**-IV-**

Por los fundamentos que anteceden, ***confirmamos*** el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones